Good morning, Counsel. Good morning, Your Honor, and may it please the Court, my name is Jesse Cripps. I'm appearing today on behalf of the appellant, Quik Pick Express, LLC. I'd like to reserve three minutes of my time for rebuttal. I notice that others have not managed to meet that goal. I'll try to do better. I think we were part of their problem. I mean, to be fair, I don't want to blame them too hard. Fair enough, Your Honor. The Supreme Court has repeatedly emphasized the liberal policy favoring arbitration. We've gotten very strong messages from the Supreme Court in that regard. Let me ask you a question that I just want to be sure I understand. What is there left to arbitrate? Fair point, Your Honor. I mean, I'm just trying to figure it out because— It's a very practical question. Yes. And I understand where you're coming from on it. There are really two elements to the claim or the lawsuit that was filed in this case. There are the class action claims that were filed, and there were the Private Attorney General Act claims. One is analyzed under the Private Attorney General Act Statute 2699. The other is analyzed separately under Rule 23 as a class action. Under Concepcion, when a class action waiver appears in an arbitration agreement, the proper course is to send those claims on an individual basis to arbitration. Right. The remaining claims under the Franco v. Erickalian case in the California Supreme Court or the California Court of Appeal is for the PAGA claims that remain to remain in the court and await the outcome of the determination of the individual class action claim that was sent to arbitration. So what happens then, in effect, is the class action claim, which was brought on a class action basis, becomes an individual claim. The individual claims are then resolved in arbitration. Then if the individual is determined to be an aggrieved employee under the Private Attorney General Act Statute or in arbitration, then they're allowed to proceed in court on the Private Attorney General Act claim. Does that explanation make sense? I'm still not clear, but go on. I mean, as I understand it, the PAGA claim has to be heard in the district court. That's the result under Sakob and Iskanian, correct? Right. Yes. And then all other class actions, as I understand it, all other representative actions other than PAGA, go down the drain because you've eliminated that by saying only individual claims go to arbitration. Right. And so in order to What is there left to arbitrate? You know, the prosecution of the individual claims. I guess that's the only thing left. And that's what happened, right, in Concepcion and its progeny. What happens is a class action claim which is brought, first and foremost, in an individual capacity, but then also as a representative on behalf of others under Rule 23, doesn't change the fact that you are still suing as an individual, first and foremost, but under Rule 23 also seeking at some point in time to represent others. So what happens is the individual claim associated with that class action is what gets sent down to arbitration. That's it? Yes. Okay. And that's important because in a Private Attorney General Act statute, the statute itself provides, and this is discussed in Franco v. Eric Kaling in the California Court of Appeal, the Private Attorney General Act statute says it can only be brought by an aggrieved employee. And so what's happening in these cases is the individual claims are being sent down to arbitration. There's a determination made by an arbitrator as to whether the person was aggrieved or not. And if not, that has race judicata in terms of that person's ability to then turn around and proceed under the Private Attorney General Act statute on behalf of others at the district court level. It's a model of efficiency, and it's really what arbitration was intended to do. The California or the U.S. Supreme Court has spoken to enforcing arbitration agreements according to their terms. And I suggest both of the issues in this case really boil down to that question. Was the arbitration agreement enforced according to its terms? We say not, not on the gateway issue of arbitrability and not on the issue of severability. And let me start first with the delegation question because I think that is determinative of the severability question. Here, the question is whether or not the parties clearly and unmistakably delegated gateway issues to the arbitrator. And there are a few reasons why that's true. First and foremost, under Brennan, the parties incorporated by reference the J.A.B.S. rules into the arbitration agreement. And we've addressed that in our brief at length. But the reason that Brennan is important is because Brennan applied a general contract rule, a general contract principle. As with any contract, when parties incorporate terms by reference into the agreement, those terms become part of the agreement. That's just basic contract law. And in a general contract case, there is no test applied as to the level of sophistication. There is no sophistication test that's ever been applied. And in fact, Brennan, when it applied that basic contract rule, it cited to six other circuits who have applied the same general contract rule, none of whom have suggested that there be any level of sophistication test applied in applying that rule. And that's important because the Supreme Court has repeatedly counseled that we should not create special rules, more rigid rules for arbitration agreements that don't otherwise exist in general contract law. There is no special sophistication rule. Oh, the district court erred in determining that it should make this contract subject to then this sophistication idea. I think that's right under the plain language of Brennan and also applying just general basic contract principles. And Kindred Health tells us. Where did it get the sophistication idea? You know, I think the district courts have been struggling whether or not there is some sort of requirement for sophistication. Brennan specifically said that the opinion should not be read as incorporating an element of sophistication. I'm being a little bit coy here. But the honest truth is, it seems to me that when we're talking about sophistication under general contract law, this isn't a contract of adhesion, is it? No. In fact, the district court held that there was an element of negotiation involved in the contract. It talked about this individual as a business owner, somebody who was able to negotiate their own rates, somebody who got their own insurance responsible for their own equipment, somebody who dealt with the Department of Transportation, all of which really begs the question, if you have an individual business owner and you're going to apply as a policy matter a sophistication test, where do we draw the line at that point in time? I'm looking at it from a general contract idea. Is this an unconscionable agreement? Has anybody ever argued it to be unconscionable? Well, below they argued it to be unconscionable by virtue of the fact that substantively it included a PAGA waiver. And this court – Well, other than the PAGA waiver, I don't want to talk about that necessarily at this point. I'm still dealing with the delegation issue. I mean, it seems to me one can talk about sophistication if you're dealing with unconscionability. But I just – I didn't find anything that anybody had argued that this was an unconscionable agreement and therefore there was an unsophisticated party and therefore it couldn't have been appropriate. Well, and I'm certainly not aware of any. Well, I'm trying to put you on notice that those are things I've looked at. Let's look at another. Did Davillas have a copy of the JAMS rule available to it when signing? I have a copy available right here. I don't need one. You are. Well, my point was going to be that it's a simple matter. The JAMS rules, as far as I've been practicing, which is nearly 16 years now, have been readily available, including if I walk over to my briefcase now on the Internet. Well, I'm not talking about when you're going to be available. You're an attorney, and you're here arguing in front of me you'd have 40-level JAMS in there. But I'm just trying to work through what it is they're suggesting. Did the rules materially change between the time the agreement was entered into and the time when the dispute was discovered requiring the arbitration? Well, there's no suggestion that it ever has. There's no argument that I'm aware of that that's ever been an issue. In fact, the realm of the arbitrator to determine gateway issues of arbitrability in the AAA rules and in the JAMS rules have existed certainly as long as I've known. And I think more important is if you look at the surrounding language in the contract itself, the surrounding language in the contract itself doesn't just point to the JAMS rules. That's an important factor. But it also specifically says, as an example of the type of issue that should be and must be determined by an arbitrator, that it includes everything related to the agreement. These are all controversies related to the agreement, including without limitation an allegation that this agreement is void from the outset. Now, that language is much broader than anything this court even considered in Brennan or Oracle, for that matter, where the contract itself spoke only to the question of disputes that arose out of an agreement and then went on to incorporate rules. It didn't give any reference in Brennan to a gateway issue. Here we have a contract that not only incorporates the JAMS rules, which I think is important, but also specifically calls out, as an example of the very type of issue that an arbitrator is required to decide, a gateway issue. It specifically elicits that. That goes well beyond what Brennan and Oracle held was sufficient to get it to an arbitrator. Well, the district court suggested that the fact that there was a delegation here, and it was a delegation of arbitrability, and it was all incorporated into the agreement, that because Aviles was unsophisticated, there's not clear and unmistakable evidence of intent to delegate. That was the district court's decision. I've tried to find a way that that intent would be involved. Is the district court suggesting there wasn't an offer and acceptance with intent? Well, I think if you look at Rent-A-Center, what Rent-A-Center talks about as evidence of intent is the question of the contract language itself first and foremost, right? And if there were evidence of intent in the record, I think that would be different than a question of sophistication, because somebody can intend something regardless of their level of sophistication. Here, we know that the individual got language that was in all bold, and specifically signed off on a contract that said that they had the ability to consult with an attorney. Certainly, it can't be the case that somebody can claim that they're not sophisticated enough to understand and really insulate themselves from the terms of the agreement by choosing not to consult with somebody who was sophisticated. That is a policy matter. Shouldn't be the path we go down. Again, that takes us down a very slippery slope, one that will lead to tremendous inconsistency and different results. I appreciate where you're going, because I thought that's where you'd go, but I'll be glad to ask your opposition about those things as well, because I realize that Brennan says that parties may incorporate by reference an agreement to delegate arbitrability to an arbitrator to agreements between sophisticated parties. My problem is, what did that mean? And I think if you look back to general contract law, general contract law tells us there is no sophistication test. Brennan also goes out of its way to say we shouldn't read Brennan as necessarily requiring a sophistication test. It was leaving the issue for another day. But again, I think if you look to the surrounding language around the jams incorporation in this agreement, what you end up with is a specific example of what the parties were looking at. Well, it seems to me, and this is the thing that worries me in trying to decide this, it seems to me that what the court was really saying that this deals with, if you will, the intent in the offer and the acceptance, or it might deal with the capacity. Now, in general contract law, I don't think sophistication has much to do with capacity, so I'm not sure it goes there. That's why I'm asking you the questions. As to intent, I mean, there's four ways to get out of the contract, one of which is there's a mistake, usually mutual. Two, it is that you could get out and there's some kind of a fraud or misstatement, misrepresentation, or there might be duress, or there might be somehow you have undue influence, but I'm still trying to decide what it meant there. That's why I wanted your idea of it. Well, and again, I think under general contract law, sophistication has nothing to do with it. I do think that intent, had it been raised below, may be relevant to some other inquiry. I'm not aware that those arguments were made or that those issues were before the court. I do know that the district court did not make any findings on the issue of intent, and, in fact, the court found that there was, in fact, a contract and went through and analyzed the contract. I also think it's important to note that the district court, in finding sophistication, presumed a lack of sophistication in its order itself. It didn't point to any specific evidence that suggested a lack of sophistication, even if that was the standard. Briefly on the issue of severability, because I see my time is running short. Your time is up. We helped you to use your time, too. Oh. So, please. Thank you, Your Honor. I can say I did. You all are very kind. So if you could just sum up. On severability. Yes. Briefly on severability, again, the agreement here does not create an all-or-nothing approach. In fact, the agreement suggests that if there are terms that are offensive, the remaining terms should be enforced. That's evident not only in the arbitration agreement, but also paragraph 17 of the agreement itself, and I think that's underscored by the fact that the agreement itself says that the arbitration provision should be read as broadly as possible, which is consistent with the federal policy that's been applied time and time again, which is that any disputes regarding the scope of arbitration should be resolved in favor of arbitration, not against arbitration. I think that's true not only as to disputes of scope that we're normally used to, but also in questions about what to sever and what not to sever. That's the case. The second sentence of the severability clause. Yeah. Right. That's the big question. The second sentence. Yeah. I think the second sentence really just answers the question that this court was posed with in SACOB. In SACOB, the court looked at a severability clause and said, okay, well, we know that, well, it looked at the private attorney general at claim, and it said, well, we know that we can't enforce a PAGA waiver, but we don't know which venue then to send this thing to. Now, what the second sentence in the severability clause says is that we know that no class action, right, will be sent to arbitration. It doesn't say that the court can't otherwise sever out the PAGA provision and allow the individual claim to go back down to arbitration, which is consistent with what the courts have been doing. All right. Thank you. Just for your information, that clause was one of the things that prompted my first question to you. And I appreciate the dialogue on that. Thank you. Thank you, counsel. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. Alvin Gomez on behalf of the Plaintiff Alvarez responding. The standard to be applied in this case is the abuse of discretion standard. And so the court needs to look to see whether or not there is any erroneous, clearly erroneous factual issues made by the court. And the erroneous standard is based upon the McCorney case where the court, the appeal. Why is it an abuse of discretion when all we're trying to figure out is whether the district court was correct as to whether the arbitration provision ought to go to the arbitrator to decide? Because the court had to make factual determinations as to whether or not there was a clear and unmistakable evidence that they agreed to arbitrate. It seems to me that all the court was doing is interpreting the contract. No, not necessarily. Unless the contract is clear and unambiguous, then one might say, well, it's ambiguous, so it's a question of fact, and then I would have a clearly erroneous theory. But the first determination as to whether it's clear or unambiguous is a question to no vo, which I can make as easy as the district court. Not necessarily, Your Honor. When you look at the district court's decision at page ER14, the court says, although plaintiff is an independent contractor who operates his own trucking business, he is similarly situated as the plaintiffs in Meadows who manage their own franchise business. Both sets of plaintiffs are small business owners, but they are nevertheless inexperienced individuals untrained in the law. Well, this means that only people who are trained in the law can enter into these agreements? Well, the court looks to you. Was there any evidence taken specifically with respect to this plaintiff? Yes, there was. There was a declaration signed by the plaintiff where the plaintiff states that his primary language is Spanish-speaking, and the court even considered that by saying, plaintiff executed the sub-hall agreement at defendant's office without the benefit of counsel and the parties dispute plaintiff's language competency. It would strain credulity to conclude that plaintiff held a clear and unmistakable intent to delegate questions of arbitrariness to an arbitrator. The court cannot reasonably conclude that plaintiff evinced a clear and unmistakable intent to delegate. That is a factual issue. I'm still having a tough time because if I'm going to have this question in front of me as a district judge, there will be affidavits, and I'll make those decisions on the affidavits as put in by the party who did not make the motion. But I'm still of a de novo nature determining what the agreement says and whether the person can enter therein. And that's where the issue is. The bottom line is it seems to me I've got to make a decision whether this arbitration provision is valid. That has nothing to do, nothing to do with a question of fact. Well, the validity goes to whether the provisions are unconscionable. And we argue that, and the district court found that the provisions were both procedurally. Tell me where the district court found this is unconscionable. Look at page beginning, page ER-12. The problem with the whole of this is. All the way, the court spent four pages, single line space, discussing why the provision was unconscionable. Which provision? The arbitration provision. For what? For what cause of action? The arbitration provision with regard to the entire case. Because there's two points. There's the first prong with regard to class, and the second is the PAGA. The court made a finding that it was unconscionable, the arbitration provision. PAGA wasn't unconscionable. Yes, it was. Per se, it was unconscionable. The PAGA provision was per se unconscionable, substantially, substantially unconscionable. Haven't we held otherwise? No, the appellate courts have held that it is unconscionable. It's unenforceable. Yeah, it's unenforceable. Different from unconscionable. Kassian said that it was unconscionable, per se. The court says, right here, it says, the court agrees with plaintiff, however, that the PAGA waiver provision in this arbitration agreement is indeed unconscionable and unenforceable. Well, but my problem, and I guess I'm going to come back to it, I realize there are things that were said here about unconscionability, but I don't find anything in here where the district court clearly made the finding that the delegation clause was unconscionable. All the district court did was say Aviles didn't have a copy of this. It does not conclude that this failure made the delegation unconscionable. Rather, the district court references the contract, such as arbitration provision. Now, you challenged the delegation clause itself, but I don't even think you challenged it as unconscionable. Yes, we did. We challenged the delegation clause. Well, if I read the district court, I don't think they get there. Yeah, they do, because it says plaintiff argues. Okay, let me read it again, because I don't agree with you. I don't think the district court made a finding of unconscionability with respect to the delegation clause, but I'll look at it again. You tell me it is. I respect you. That's a good one. But I guess I'm, in general, I'm aware of no case where a contract cannot incorporate a delegation clause. You know of one? They cannot incorporate a delegation clause? Right. The courts can, but they can't. The parties can. They can. Every California court says that it can be incorporated by reference, right? It can be incorporated by reference, but the issue is, was it provided? What the district court found, a copy was not provided to Mr. Aviles. Well, it wouldn't have mattered, because he doesn't understand English, according to you. Exactly. And so. If they had given him a copy, you wouldn't be making the same argument. Your argument essentially is, is that if somebody signs a contract and is given a contract and presumably has some general idea of what that contract is for, he can get out of every term of the contract because he claims he doesn't understand it. Not necessarily, but when you look at the provision that they, the delegation clause, the delegation clause says, according to the laws of JAMS, according to when the case was arbitrated. It doesn't say what specifically. There's no meeting of the minds with regard to what specific provisions of the JAMS provisions apply. Nothing whatsoever. And so this contract was signed in 2014. The arbitration was made in 2015. That's a great argument, but I'll ask you the same question I asked counsel. Did the rules under JAMS change materially between the time the agreement was entered into and the time when the dispute was discovered? That was never raised at the trial court level by anyone. By anyone, including you. Correct. But it hasn't changed. We don't know. It hasn't changed. What do you mean you don't know? These things, you could go on, you could Google it and get that information. Yeah, we prevailed on it. In fact, I asked my law clerk to do that, and he assured me that they hadn't changed. Most of the cases in this area, we prevailed and defeated the arbitration provision, so there's no need for us to look at the provisions and make that argument because we've always argued that it's procedurally and substantively unconscionable, and the court dealt with that issue at page ER9, delegation clause, and the court talks about that. Let me read the district what the district court says, and I got it right here, ER12. The contract does not demonstrate an unmistakable intent by the parties to delegate the questions of arbitrability to the arbitrator. Therefore, the arbitration provision is unimportant. That's all he says. He never talks about unconscionability. Your Honor, if you look to the prior pages, on the prior pages, it talks about that. On page 10, on the second prong, first, the language of the clause must be clear and unmistakable. Second, the delegation must not be revocable under state contract offenses such as fraud, duress, or unconscionability. The clear --" Well, just because he cites that general term, I'm saying get to the point. Did he say the delegation clause was unconscionable? I believe he did say it was unconscionable. I understand your argument. And he goes through the analysis on all the pages right before your decision, your statement, where he talks about that. And he talks about the unsophistication of the parties. And he talks about the English language competency. And he concludes that the court cannot reasonably conclude that plaintiff evinced a clear and unmistakable intent to delegate. Why don't we talk about the waiver being severable? On the issue of PAGA? Yes. Yeah, and to me, that's the easiest decision. When the court looks to it, it's really just an issue of law under Acasian, where the court has said under Sakoff that the provisions or the PAGA, you cannot have a waiver of PAGA provision. That's unconscionable per se. We're not talking about waiver. He didn't say it was unconscionable. But can it be severed? They said it was unenforceable. I mean, you keep saying that. Well, he said it's unconscionable. In the Sakoff case, I think it was Judge Acuda said, we are not aware of a California case holding that a PAGA waiver is substantively unconscionable. Yeah, it's unconscionable. Nor has Pablon directed us to a case holding that a waiver of a representative claim other than PAGA is substantively unconscionable. In the absence of a substantively unconscionable finding, there is no basis for that to not enforce it on that ground. I'm reading from page 1264 of 846F3rd in the Sakoff case. In the Acasian case, the California Supreme Court concluded that where an employment agreement couples the waiver of a representative claims under PAGA, it is contrary to public policy and unenforceable as a matter of law. Unenforceable as a matter of law is different from unconscionable. Well, it says here it's unconscionable.  The court agrees with Plaintiff, however, that the PAGA waiver provision in this arbitration provision is indeed unconscionable and unenforceable. That's at page 14, Your Honor. The district court made the finding that the provision was unconscionable and unenforceable. What do you do with Publon v. C.H. Robinson? It's at 846F3rd 1251. Publon expressly says, the touchstone of whether an unenforceable provision is also separable is whether the central purpose of the contract is tainted with illegality. In other words, it doesn't have anything to do with what you're suggesting to us. Does the agreement contain more than one objectionable term, which indicates there was a systematic effort to impose? All we're doing here is we're just saying we can sever the claim. Yeah, but you're forgetting California law. Under California law, it's an abusive discretion standard. A court has discretion to either sever an unconscionable provision from an agreement or refuse to enforce the agreement in its entirety under PCORI at 601F3d1005, where, however, a contract explicitly states an unconscionable provision is not to be severed from a remainder of the agreement, the court must enforce the non-severable clause according to the terms. And here, the court says that they are, the court agrees with plaintiff that the unconscionable PAGA waiver within the arbitration provision cannot be severed according to the expressed terms of the contract requires invalidation of the entire agreement provision because PAGA waiver expressly forbids severance. Therefore, the court strikes the entire arbitration provision from the Sobhol Agreement consistent with the plain language of the document. So you have to look to the plain language of the document, and the trial court did that. And unless you find an abusive discretion on the part of the trial court, that decision must stand. I understand your argument. Thank you. All right. Thank you, counsel. Rebuttal? I'll give you a couple of minutes. Thank you. I appreciate that. On the last point, on the question of severability, what counsel said was that the district court did not apply discretion. It looked at the plain language of the contract. His words were it looked at the plain language of the contract. And that's exactly what the district court opinion says. That's what the district court did. And when we're interpreting contract language, that is de novo review. That is not an abusive discretion standard. Well, I understand. But I also understood what his argument was that this is all abusive discretion. I don't think I agree with him. In fact, I don't. But I understood what his argument was. And the case that you referred to, Judge Smith, was the Poublon v. C.H. Robinson case. It not only says that PAGA claims are not necessarily unconscionable, that they are just simply unenforceable, it also provides the roadmap for how to deal with those cases. This court did so in the Smith v. Oakley case. It carved out the PAGA claim from the agreement. It did so in the Poublon case. And it did so in the Mohamed v. Uber case. Those cases provide the roadmap. They did exactly what we're asking for in this case, which is just if there's an unenforceable provision, such as PAGA, simply carve it out and let the remainder go to arbitration. And, again, on the issue of the question of whether or not somebody understood a contract, whether the contract's void to begin with, those issues are expressly reserved in the arbitration agreement for the arbitrator. The arbitration language here not only refers to the JAMS language, which is available to everybody on Google, but it specifically gives the example beyond whatever Brennan did and Oracle did, it says issues related to whether or not this contract is void in the first place. Those are exactly the kind of gateway issues contemplated by this agreement. With that, I'll conclude. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman